IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

KETURAH WINTERS, *et al.*,
            Plaintiffs,

v.

AKZO NOBEL SURFACE CHEMISTRY, LLC, *et al.*,
            Defendants.

CIVIL ACTION
No. 19-5398

**MEMORANDUM**

**SCHMEHL, J.  /s/ JLS**                                                                 **MAY 12, 2020**

      This dispute arises out of Plaintiff Keturah Winters' alleged exposure to the chemical Alcosphere Lavender Meadows, "a highly toxic, ultrahazardous, and abnormally dangerous chemical, in powder form." (ECF No. 22, ¶ 27.) Winters was employed by American Airlines as a Fleet Service Agent at Philadelphia International Airport in Philadelphia, Pennsylvania. (*Id.*) On March 24, 2018, while Winters was working in this capacity, a fiber drum containing Alcosphere Lavender Meadows, which allegedly lacked the proper liner, made contact with a "'pull-in-hook' roller" and was punctured. (*Id.*, ¶¶ 27-31.)

      As a result, "the highly toxic, ultrahazardous, and abnormally dangerous powdered chemical contents of the drum were . . . expelled and permeated the vicinity of the aircraft where Plaintiff, Keturah Winters[,] was situated . . ." exposing her to the substance. (*Id.*, ¶ 32.) Consequently, Winters sustained serious and permanent injuries, including "respiratory distress, acute asthma exacerbation, dyspnea, mucosal edema, chronic rhinitis, Reactive Airways Dysfunction Syndrome (RADS) secondary to toxic exposure, mental and emotional distress . . . an anxiety reaction and shock to her nerves and nervous system; and other neurological,

1

psychological[,] and respiratory injuries, the full extent of which is yet to be determined." (*Id*., ¶ 73.)

Plaintiff Keturah Winters has now brought the following claims against the below-named defendants:

I. Negligence, Carelessness, and Recklessness against Defendant Nouryon Surface Chemistry, LLC ("Nouryon SC");
II. Strict Liability against Defendant Nouryon SC;
III. Negligence, Carelessness, and Recklessness against Defendant BTX Global Logistics ("BTX");
IV. Strict Liability against Defendant BTX;
V. Negligence, Carelessness, and Recklessness against Defendant Bill Timpano;
VI. Strict Liability against Defendant Bill Timpano;
VII. Negligence, Carelessness, and Recklessness against Defendant Worldwide Flight Services ("Worldwide");
VIII. Strict Liability against Defendant Worldwide;
IX. Negligence, Carelessness, and Recklessness against Defendant Spray-Tek, Inc. ("Spray-Tek");
X. Strict Liability against Defendant Spray-Tek;
XI. Negligence, Carelessness, and Recklessness against Defendant BDP International, Inc. ("BDP");
XII. Strict Liability against Defendant BDP;
XIII. Negligence, Carelessness, and Recklessness against Defendant Hi-Tech Packing & Crating, Inc. ("Hi-Tech");
XIV. Strict Liability against Defendant Hi-Tech;
XV. Negligence, Carelessness, and Recklessness against Defendants John Doe 1-10 and ABC Corporations 1-10;
XVI. Strict Liability against Defendants John Doe 1-10 and ABC Corporations 1-10; and

(*Id*., ¶¶ 71-147.)

Ms. Winter's husband, Eric Winters, is also a plaintiff in this dispute and has asserted a claim for loss of consortium against all defendants. (*Id*., ¶¶ 148-51.)

This matter is now before the Court on Defendant BTX's Motion to Dismiss for lack of personal jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(2). (ECF No. 30.) First, BTX contends that it is not subject to general jurisdiction in the Commonwealth of Pennsylvania because it "is incorporated under the laws of the State of Connecticut, and its principal place of

business is in Connecticut. . ." (*Id*. at 6.)  In response, and highlighting an unsettled question of law within the Third Circuit, Plaintiffs aver that general jurisdiction is proper as "a corporation or other business entity consents to general personal jurisdiction in the Commonwealth of Pennsylvania where it has registered as a foreign corporation to do business in the Commonwealth . . ." (ECF No. 46 at 8 (citing 15 PA. CONS. STAT. § 411 (2015).)  Second, BTX claims that this Court cannot exercise specific jurisdiction over it in this dispute as "Plaintiffs have not only failed to proffer any factual allegations, but will [also] be unable to prove, that their claims arise out of any contacts or activity by BTX within or directed toward Pennsylvania." (ECF No. 30 at 10.)  We assess each argument in turn.

## I.      LEGAL STANDARD

Exercising general jurisdiction over a defendant is appropriate where a defendant's activities within a state are "so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities." *Daimler AG v. Bauman*, 571 U.S. 117, 118 (2014) (citing *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 318 (1945)).  The Supreme Court has clarified that "'. . . the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home.'" *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1780 (2017) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011)).  Generally, for corporations, this is the place of incorporation and the corporation's principal place of business, although general jurisdiction may be exercised where a corporation's affiliations with a forum state are so continuous and systematic as to render it essentially at home there. *Daimler*, 571 U.S. at 137-139 (citing *Goodyear*, 564 U.S. at 919).

The exercise of specific jurisdiction, in contrast, turns on the connection between the forum jurisdiction and the underlying controversy; it is limited to issues arising out of or related to the controversy establishing jurisdiction. *Goodyear*, 564 U.S. at 923-24 (citations omitted). Indeed, the Supreme Court has long held that, to exercise specific jurisdiction, there must be "some act by which the defendant purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Id.*, 564 U.S. at 924 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980) (holding that an Oklahoma court could not exercise personal jurisdiction "over a nonresident automobile retailer and its wholesale distributor in a products-liability action, when the defendants' only connection with Oklahoma [was] the fact that an automobile sold in New York to New York residents became involved in an accident in Oklahoma."); *Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 112 (1987) (holding that the "substantial connection" between a defendant and the forum, necessary for a finding of minimum contacts, must derive from an action purposefully directed toward the forum state and that "a defendant's awareness that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State.").

Pennsylvania's long-arm statute allows us to exercise jurisdiction over nonresident defendants to the full extent permitted by the United States Constitution. FED. R. CIV. P. 4(k)(2); 42 PA. CONS. STAT. § 5322(b). When a defendant challenges the court's personal jurisdiction, the plaintiff then bears the burden "to come forward with sufficient facts to establish that jurisdiction is proper." *Danziger & De Llano, LLP v. Morgan Verkamp LLC*, 948 F.3d 124, 129 (3d Cir. 2020) (quoting *Mellon Bank (E.) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992)). To

4

analyze these facts, we rely upon the three-part framework established by our Third Circuit Court of Appeals. First, the plaintiff must show that the defendant purposefully directed its activities at the forum. *Allaham v. Naddaf*, 635 F. App'x 32, 39 (3d Cir. 2015) (citations omitted). Second, the litigation must arise out of or relate to at least one of those activities. *Id.* Third, if the plaintiff fulfills the first two requirements, we may consider whether the exercise of jurisdiction "comport[s] with fair play and substantial justice." *Id.* (quoting *Burger King Corp.*, 471 U.S. at 476.)

## II.   ANALYSIS

### a. BTX is Subject to General Jurisdiction Within the Commonwealth of Pennsylvania

We first turn to BTX's argument that it is not subject to general jurisdiction within this Commonwealth as it (1) is incorporated under the laws of Connecticut and (2) maintains its principal place of business in Shelton, Connecticut. (ECF No. 30 at 2.) Generally, the exercise of general jurisdiction over a corporate defendant is appropriate where it is incorporated, where it has its principal place of business, and where its affiliations with a forum state are so continuous and systematic as to render it essentially at home. *Daimler*, 571 U.S. at 137-139 (citing *Goodyear*, 564 U.S. at 919). Based on the uncontested facts surrounding BTX's place of incorporation and principal place of business, BTX is clearly subject to general jurisdiction in the State of Connecticut.

The Supreme Court and the Third Circuit Court of Appeals, however, have also long held that "[c]onsent is a traditional basis for assertion of jurisdiction long upheld as constitutional." *Bane v. Netlink, Inc.*, 925 F.2d 637, 641 (3d Cir. 1991) (citing *Hess v. Pawloski*, 274 U.S. 352, 356-57 (1927); *Dehne v. Hillman Inv. Co.*, 110 F.2d 456, 458 (3d Cir. 1940)). At issue in this case

is whether BTX consented to general jurisdiction in the Commonwealth of Pennsylvania by virtue of registering in Pennsylvania as a foreign corporation. (ECF No. 30 at 6-8.) To conduct business in Pennsylvania, foreign corporations must register as such with the Pennsylvania Secretary of State. 15 PA. CONS. STAT. § 411(a). Pennsylvania law further establishes that in doing so, "qualification as a foreign corporation under the laws of this Commonwealth," constitutes a sufficient basis for "the tribunals of this Commonwealth to exercise general personal jurisdiction. . ." 42 PA. CONS. STAT. § 5301(a)(2)(i).

This presents an issue of unsettled law within the Third Circuit. Current Third Circuit precedent, as encapsulated in *Bane v. Netlink, Inc.*, upholds the validity of exercising general personal jurisdiction over foreign corporations based on consent by registration. *Bane v. Netlink, Inc.*, 925 F.2d 637, 641 (3d Cir. 1991) ("We hold that because Netlink was authorized to do business in Pennsylvania, it was subject to the exercise of personal jurisdiction by Pennsylvania courts under section 5301(a)(2)(i) or (ii).").

However, in light of recent Supreme Court jurisprudence, this Court has issued at least two opinions that are inconsistent with Third Circuit precedent. *See In re Asbestos Prods. Liab. Litig. (No. IV)*, 384 F. Supp. 3d 532, 545 (E.D. Pa. 2019) ("The rule that emerges from *Daimler* change[s] the standard for determining when a state may exercise general personal jurisdiction over a foreign corporation. Therefore . . . the result obtained under *Bane* (general personal jurisdiction over a foreign corporation by statutory consent) cannot stand under the new constitutional standard adopted in *Daimler* (general personal jurisdiction only where the foreign corporation is at home). Thus, this Court is bound to apply the new *Daimler* standard notwithstanding previous circuit law."); *see also Reynolds v. Turning Point Holding Co.*, No. 19-1935, 2020 U.S. Dist. LEXIS 33163, at *14 (E.D. Pa. Feb. 26, 2020) (". . . having reviewed the decisions cited above, this Court

6

agrees with and adopts as its own Judge Robreno's analysis in *In re Asbestos* . . . The Pennsylvania statutory scheme requiring foreign corporations to consent to general personal jurisdiction in Pennsylvania by virtue of registering to do business here violates the Due Process Clause. Therefore, the Court does not have general personal jurisdiction over TPNJ.").

Core to this departure from Third Circuit precedent is the conclusion that the Supreme Court's holding in *Daimler* renders unconstitutional Pennsylvania's statute requiring foreign corporations to consent to general jurisdiction within the Commonwealth. *See In re Asbestos*, 384 F. Supp. 3d at 536-45. In *In re Asbestos*—the foremost opinion within this District to depart from Third Circuit precedent—Judge Robreno focused on a narrow issue of law in light of *Daimler*: whether the consent to jurisdiction that foreign corporations give under Pennsylvania's statutory regime is knowing and voluntary and, thus, valid. *Id*. In this analysis, Judge Robreno recognized that the Pennsylvania statutory structure "is unique in that it provides explicitly that by the act of registering to do business in Pennsylvania, the foreign corporation consents to general jurisdiction." *Id*. at 539. He found, however, that the consent extracted by this statutory scheme was "functionally involuntary" as it presents companies with "two unsatisfactory choices": (1) register as a foreign corporation and consent to general jurisdiction; or (2) choose not to register and be denied the ability to do business in Pennsylvania. *Id*. at 542. Because of this, Judge Robreno held that the current statutory scheme "allows Pennsylvania to impermissibly extract consent at the cost of a constitutional right," and that it thus "violates the Due Process Clause and is unconstitutional." *Id.*

Defendants propose that we adopt this reasoning and disregard the valid, binding precedent provided in *Bane*. Plaintiffs, conversely, argue that ". . . the *Daimler* Court did not reference anything regarding consent to jurisdiction based on business registration. . . [noting that] the only

7

discussion [in *Daimler* of] consent relates to a passing reference to a corporation that 'had not consented to suit in the forum.'" (ECF No. 46 at 9-10 (quoting *Daimler*, 571 U.S. at 129).) We agree with Plaintiffs and do not adopt the reasoning of *In re Asbestos* for two reasons.

First, *Bane* remains valid and controlling law within this Circuit. *See Replica Auto Body Panels & Auto Sales, Inc.*, No. 19-2018, 2020 U.S. Dist. LEXIS 20837, at *8 (M.D. Pa. Apr. 16, 2020); *see also Kraus v. Alcatel-Lucent*, No. 18-2119, 2020 U.S. Dist. LEXIS 34146, at *88 (E.D. Pa. Feb. 27, 2020) (noting that as of the time the matter was decided, "[e]xcept for [*In re Asbestos*] and two Common Pleas court cases, all courts addressing this issue have held that consent-by-registration remains a constitutional basis for personal jurisdiction under current Third Circuit law."). Until there is a change in the applicable Third Circuit law, we are bound by the rulings of the Third Circuit and the Supreme Court. *See Allegheny Gen. Hosp. v. N.L.R.B.*, 608 F.2d 965, 970 (3d Cir. 1979).

Second, we find that the Supreme Court's holding in *Daimler* does not establish a new constitutional standard that is relevant to the narrow issue in this case. *See Planned Parenthood of Se. Pa. v. Casey*, 947 F.2d 682, 697-98 (3d Cir. 1991). As such, *Daimler* does not change the validity of *Bane* in this Circuit. The Supreme Court in *Daimler* did not address "the interplay between consent to jurisdiction and the due process limits of general jurisdiction." *Kraus*, 2020 U.S. Dist. LEXIS 34146, at *88 (quoting *Plumbers' Local Union No. 690 Health Plan v. Apotex Corp.*, No 16-665, U.S. Dist. LEXIS 114733, at *32 (E.D. Pa. July 24, 2017)). Indeed, to the extent that the *Daimler* court mentioned consent to jurisdiction, it did so to distinguish it from jurisdiction based on a defendant's contacts with the forum. *Id*. (citing *Daimler*, 571 U.S. at 129).

The majority of opinions on this issue within our Third Circuit concur with this analysis. *See, e.g., Otsuka Pharm. Co. v. Mylan Inc.*, 106 F. Supp. 3d 456, 468 (D.N.J. 2015) ("Indeed,

8

*Daimler* in its entirety contains but one fleeting reference to the concept of jurisdiction by consent, and this limited reference served only to distinguish between traditional 'consensual' jurisdiction and the 'non-consensual bases for jurisdiction' addressed in the decision, rather than to cast any doubt on the continued vitality of consent-based jurisdiction."); *see also Bors v. Johnson & Johnson*, 208 F. Supp. 3d 648, 655 (E.D. Pa. 2015) (recognizing that consent remains a valid form of establishing personal jurisdiction under the Pennsylvania registration statute after *Daimler*); *see also Gorton v. Air & Liquid Sys. Corp.*, 303 F. Supp. 3d 278, 297 (M.D. Pa. 2018) (noting that *Daimler* does not mention consent to jurisdiction but for a brief quote of *Goodyear* and thus does not eliminate a party's ability to consent to jurisdiction in a forum); *see Acorda Therapeutics, Inc. v. Mylan Pharms., Inc.*, 78 F. Supp. 3d 572, 588 (D. Del. 2015) (highlighting that Chief Judge Stark of the U.S. District Court for the District of Delaware specifically rejected an argument that *Daimler* eliminated consent by registration as a basis for general jurisdiction).

As such, we find that *Daimler* does not squarely address the pivotal issue in this case, and that we must apply Third Circuit precedent. Following *Bane*, we therefore hold that this Court may exercise general jurisdiction over BTX by virtue of its registration as a foreign corporation in the Commonwealth of Pennsylvania.

### b. BTX Would Not Otherwise Be Subject to Specific Jurisdiction in the Commonwealth of Pennsylvania in this Dispute

BTX describes itself as "a freight forwarder arranging for freight transportation services, by air and ground, on behalf of its customers, both domestically within the U.S. and internationally." (ECF No. 30 at 2.) Relevant to this case, Plaintiffs allege in their Amended Complaint that BTX, "pursuant to contract, handled and shipped the . . . fiber drum containers containing the aforesaid highly toxic, ultrahazardous, and abnormally dangerous chemical to the

Philadelphia International Airport." (ECF No. 22, ¶ 52.) Plaintiffs further allege that "[p]rior to said shipment, Defendant BTX was responsible for inspecting the aforesaid fiber drum containers and [ensuring] that they were safely constructed and could safely be transported, loaded, and delivered without being punctured. . ." (*Id*., ¶ 53.)

In its Motion, however, BTX argues that Plaintiffs have failed to sufficiently allege that "BTX's activities in connection with the shipment . . . took place in Pennsylvania or were even directed to Pennsylvania." (ECF No. 30 at 9.) BTX alleges that it merely arranged the shipment of the Alcosphere Lavender Meadows from John F. Kennedy International Airport ("JFK"), in New York City, to Amsterdam, Netherlands. (*Id*. at 10.) It claims that American Airlines ("AA") unilaterally made the decision to transport the shipment from JFK to Philadelphia International Airport ("PHL"), and that American Airlines was responsible for loading the freight onto the aircraft at the time of Plaintiff Keturah Winters's injuries. (*Id*. at 4 ("AA decided to transport the shipment to PHL because AA wanted to consolidate the shipment from JFK with other shipments scheduled to depart from PHL. AA made its own arrangements to transport the shipment from JFK to PHL. BTX did not make, and was not involved in, any of the arrangements to transport the shipment from JFK to PHL.")) To this point, BTX's Motion emphasizes that its "limited handling and inspection of the shipment occurred only in New York . . . [and that its] role with respect to the shipment was complete upon delivery of the shipment to American Airlines at JFK [A]irport." (*Id.* at 10.)

In response, Plaintiffs offer the following facts to show that BTX "purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Goodyear*, 564 U.S. at 924 (citations omitted). First, Plaintiffs propose that "[i]t is uncontested that this product that was shipped and certified by BTX is the

10

same product that caused Plaintiffs' injuries in Pennsylvania on March 24, 2018." (ECF No. 46 at 15.) This is nonresponsive to BTX's assertion that its responsibility and control ended upon delivery of the shipment to American Airlines in New York, and that it was not involved in the decision to move the shipment from JFK to PHL. Plaintiffs, nonetheless, assert that BTX "hired a company incorporated in Pennsylvania, Cougar Express, Inc., to actually transport the package to the [Philadelphia] airport." (*Id*. at 15-16.) Yet, Plaintiffs provide no evidence that this Pennsylvania company (1) delivered the chemical to PHL; or (2) is the company with which BTX allegedly contracted to deliver the Alcosphere Lavender Meadows from New York to Pennsylvania. Indeed, BTX asserts that Plaintiffs have misidentified Cougar Express, Inc., incorrectly naming a Pennsylvania-based company that was not authorized to operate as a motor carrier on the date of shipment. (ECF No. 49 at 3.) Further, BTX offers numerous documents as evidence that the Cougar Express, Inc. with which it contracted is a New York corporation, "and that its services are limited to providing transportation services to points [only] in New York and New Jersey." (*Id*. at 2-3, Exs. B-E.)

Second, Plaintiffs argue that the exercise of specific personal jurisdiction is appropriate because (1) BTX has registered as a foreign corporation in Pennsylvania; (2) BTX maintains an office in Allentown, Pennsylvania; and (3) BTX advertises on its website that it does business in Pennsylvania. (*Id.* at 15-16.) None of these arguments support the exercise of specific jurisdiction here because Plaintiffs do not show how the present litigation arises out of or relates to at least one of these activities. *See Allaham*, 635 F. App'x at 39 (citations omitted). The Third Circuit has emphasized that "'the relationship among the defendant, the forum, and the litigation' is crucial" when assessing if due process is met in this analysis. *Id.* (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)). The Supreme Court has also underscored that specific jurisdiction depends on an

11

affiliation between the forum and the underlying controversy. *Goodyear*, 564 U.S. at 919. Here, Plaintiffs have offered no facts showing that this litigation arises out of, or relates to, these alleged activities within, or connections to, Pennsylvania. Indeed, though these facts may support Plaintiffs' arguments in favor of general personal jurisdiction, they do not support the exercise of specific jurisdiction over BTX in this dispute.

As such, though we find that BTX has consented to general personal jurisdiction in the Commonwealth of Pennsylvania—and that we will properly exercise jurisdiction on that basis—we separately conclude that Plaintiffs would have not established a sufficient factual basis for the exercise of specific jurisdiction over BTX in this matter.

### III. CONCLUSION

For the above-stated reasons, we hold that this Court may exercise general personal jurisdiction over BTX. An appropriate Order follows.