IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KETURAH WINTERS, *et al.*,<br>                Plaintiffs,<br><br>    v.<br><br>AKZO NOBEL SURFACE CHEMISTRY, LLC,<br>*et al.*,<br>                Defendants. | CIVIL ACTION<br>No. 19-5398 |

**<u>MEMORANDUM</u>**

**SCHMEHL, J.  /s/ JLS**                                                                                          **MAY 26, 2020**

      This dispute arises out of Plaintiff Keturah Winters' alleged exposure to the chemical Alcosphere Lavender Meadows, "a highly toxic, ultrahazardous, and abnormally dangerous chemical, in powder form." (ECF No. 22, ¶ 27.) Winters was employed by American Airlines as a Fleet Service Agent at Philadelphia International Airport in Philadelphia, Pennsylvania. (*Id*.) On March 24, 2018, while Winters was working in this capacity, a fiber drum containing Alcosphere Lavender Meadows, which allegedly lacked the proper liner, made contact with a "'pull-in-hook' roller" and was punctured. (*Id*., ¶¶ 27-31.)

      As a result, "the highly toxic, ultrahazardous, and abnormally dangerous powdered chemical contents of the drum were . . . expelled and permeated the vicinity of the aircraft where Plaintiff, Keturah Winters[,] was situated . . ." exposing her to the substance. (*Id*., ¶ 32.) Consequently, Winters sustained serious and permanent injuries, including "respiratory distress, acute asthma exacerbation, dyspnea, mucosal edema, chronic rhinitis, Reactive Airways Dysfunction Syndrome (RADS) secondary to toxic exposure, mental and emotional distress . . . an anxiety reaction and shock to her nerves and nervous system; and other neurological,

1

psychological[,] and respiratory injuries, the full extent of which is yet to be determined." (*Id*., ¶ 73.)

Plaintiff Keturah Winters has now brought the following claims against the below-named defendants:

I. Negligence, Carelessness, and Recklessness against Defendant Nouryon Surface Chemistry, LLC ("Nouryon SC");
II. Strict Liability against Defendant Nouryon SC;
III. Negligence, Carelessness, and Recklessness against Defendant BTX Global Logistics ("BTX");
IV. Strict Liability against Defendant BTX;
V. Negligence, Carelessness, and Recklessness against Defendant Bill Timpano;
VI. Strict Liability against Defendant Bill Timpano;
VII. Negligence, Carelessness, and Recklessness against Defendant Worldwide Flight Services ("Worldwide");
VIII. Strict Liability against Defendant Worldwide;
IX. Negligence, Carelessness, and Recklessness against Defendant Spray-Tek, Inc. ("Spray-Tek");
X. Strict Liability against Defendant Spray-Tek;
XI. Negligence, Carelessness, and Recklessness against Defendant BDP International, Inc. ("BDP");
XII. Strict Liability against Defendant BDP;
XIII. Negligence, Carelessness, and Recklessness against Defendant Hi-Tech Packing & Crating, Inc. ("Hi-Tech");
XIV. Strict Liability against Defendant Hi-Tech;
XV. Negligence, Carelessness, and Recklessness against Defendants John Doe 1-10 and ABC Corporations 1-10;
XVI. Strict Liability against Defendants John Doe 1-10 and ABC Corporations 1-10; and

(*Id*., ¶¶ 71-147.)

Ms. Winter's husband, Eric Winters, is also a plaintiff in this dispute and has asserted a claim for loss of consortium against all defendants. (*Id*., ¶¶ 148-51.)

This matter is now before the Court on Defendant Bill Timpano's Motion to Dismiss for Lack of Personal Jurisdiction, Pursuant to Federal Rule of Civil Procedure 12(b)(2), or in the Alternative, Motion for Judgment on the Pleadings Pursuant to Federal Rule of Civil Procedure 12(c). (ECF No. 45.) Mr. Timpano, during all relevant periods, was employed by co-defendant

Bacarella Transportation Services, Inc. (d/b/a BTX Global Logistics, hereinafter "BTX") as its Station Manager in New York, near John F. Kennedy International Airport ("JFK"). (*Id*. at 2-3.) BTX is a "freight forwarder arranging for freight transportation services, by and air and ground, on behalf of its customers, both domestically within the U.S. and internationally." (*Id*. at 3.)

In his jurisdictional motion, Timpano asks this Court to dismiss Plaintiffs' claims against him, maintaining that we cannot exercise either general or specific personal jurisdiction over him. (ECF No. 45 at 7.) He first asserts that exercising general jurisdiction is inappropriate as he is "not a citizen or resident of Pennsylvania." He further argues that this Court may not exercise specific jurisdiction over him in this matter as "Plaintiffs [have] not identif[ied] any contacts by Timpano with the forum or the Plaintiffs, let alone continuous and substantial contacts." (*Id*.) In the alternative, Timpano has moved for judgment on the pleadings, claiming that "Plaintiffs['] causes of action of personal liability against Timpano for the alleged torts of his employer fail as a matter of law and must be dismissed. . ." (*Id*. at 14.)

For the reasons detailed below, we find that we cannot exercise personal jurisdiction over Mr. Timpano. As such, we transfer all claims against him to the United States District Court for the Eastern District of New York. Because we find that we do not have jurisdiction, we do not address Timpano's motion in the alternative.

## I. LEGAL STANDARD

### a. Federal Rule of Civil Procedure 12(b)(2)

Exercising general jurisdiction over a defendant is appropriate where a defendant's activities within a state are "so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities." *Daimler AG v. Bauman*,

3

571 U.S. 117, 118 (2014) (citing *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 318 (1945)).  The Supreme Court has clarified that "'. . . the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home.'"  *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1780 (2017) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011)).

The exercise of specific jurisdiction, in contrast, turns on the connection between the forum jurisdiction and the underlying controversy; it is limited to issues arising out of or related to the controversy establishing jurisdiction.  *Goodyear*, 564 U.S. at 923-24 (citations omitted).  Indeed, the Supreme Court has long held that, to exercise specific jurisdiction, there must be "some act by which the defendant purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."  *Id.*, 564 U.S. at 924 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980) (holding that an Oklahoma court could not exercise personal jurisdiction "over a nonresident automobile retailer and its wholesale distributor in a products-liability action, when the defendants' only connection with Oklahoma [was] the fact that an automobile sold in New York to New York residents became involved in an accident in Oklahoma."); *Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 112 (1987) (holding that the "substantial connection" between a defendant and the forum, necessary for a finding of minimum contacts, must derive from an action purposefully directed toward the forum state and that "a defendant's awareness that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State.").

Pennsylvania's long-arm statute allows us to exercise jurisdiction over nonresident

4

defendants to the full extent permitted by the United States Constitution. FED. R. CIV. P. 4(k)(2); 42 PA. CONS. STAT. § 5322(b). When a defendant challenges the court's personal jurisdiction, the plaintiff then bears the burden "to come forward with sufficient facts to establish that jurisdiction is proper." *Danziger & De Llano, LLP v. Morgan Verkamp LLC*, 948 F.3d 124, 129 (3d Cir. 2020) (quoting *Mellon Bank (E.) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992)). To analyze these facts, we rely upon the three-part framework established by our Third Circuit Court of Appeals. First, the plaintiff must show that the defendant purposefully directed its activities at the forum. *Allaham v. Naddaf*, 635 F. App'x 32, 39 (3d Cir. 2015) (citations omitted). Second, the litigation must arise out of or relate to at least one of those activities. *Id.* Third, if the plaintiff fulfills the first two requirements, we may consider whether the exercise of jurisdiction "comport[s] with fair play and substantial justice." *Id.* (quoting *Burger King Corp.*, 471 U.S. at 476.)

## II. ANALYSIS

### a. Bill Timpano's Motion is Not Stricken as Untimely

Before analyzing the appropriateness of exercising jurisdiction over Bill Timpano, we must address Plaintiffs' argument that Timpano's motion is untimely and thus must be stricken. (*See* ECF No. 50 at 7-8.) Citing the Federal Rules of Civil Procedure, Plaintiffs note that defendants, in general, shall serve responsive pleadings within 20 days after being served with the Complaint. (*Id.* at 7 (citing FED. R. CIV. P. 12(a)(1)(A).) Plaintiffs further state that Federal Rule of Civil Procedure 15 "provides that if any response to an amended pleading is required, it must be made within the time remaining to respond to the original pleading, or within 14 days of service of the amended pleading, whichever is later." (*Id.* (citing FED. R. CIV. P. 15(a)(3).)

The following timeline is undisputed among Plaintiffs and Timpano. (*See* ECF No. 50; *see also* ECF No. 52.) Plaintiffs filed their original Complaint in the Philadelphia Court of Common Pleas on October 15, 2019. (ECF No. 50 at 7.) Mr. Timpano was served with this Complaint on November 13, 2019; he then filed his Answer on December 4, 2019. (*Id.* at 7.) On March 3, 2020, after the matter was removed to this Court, Plaintiffs filed an Amended Complaint.[1] (*Id.*) Timpano then filed the Motion to Dismiss at issue on April 3, 2020. (*Id.*) Now, Plaintiffs assert that Timpano's motion "was filed [18] days late and, therefore, the motion must be stricken and denied." (*Id.*) In so arguing, however, Plaintiffs do not cite to any case law, either binding or persuasive. (*See id.*) Moreover, they do not argue that Timpano has waived his objection to personal jurisdiction or cite to any law supporting the proposition that this Court must strike and deny Timpano's motion if it is untimely. (*See id.*)

In the absence of a motion for default judgment, this Court has discretion to allow an untimely motion. *Pineda v. Chromiak*, No. 17-5833, 2018 U.S. Dist. LEXIS 125803, at *8 (E.D. Pa. July 27, 2018) (citing *Kampf v. Heinecke*, No. 94-6452, 1995 U.S. Dist. LEXIS 5592, at *3-4 (E.D. Pa. Apr. 27, 1995). Indeed, "mere delay, absent a showing of prejudice, will not normally cause the denial of a late pleading." *Tucker v. Reading Co.*, 55 F.R.D. 327, 329 (E.D. Pa. 1972). Here, Plaintiffs have neither moved for default judgment nor identified any prejudice they have suffered as a result of Timpano's untimely filing. (*See* ECF No. 50.) As such, in our discretion, we will not strike Timpano's motion as untimely and will proceed with an assessment of its merits.

---

[1] In his reply to Plaintiffs' response, Timpano notes that "Plaintiffs did not amend their Complaint until March 3, 2020, which was [90] days after Timpano filed his Answer to the original Complaint." (ECF No. 52 at 6.) Because of this, he argues that Plaintiffs' First Amended Complaint was thus "untimely and should be stricken and treated as a nullity either on the Court's motion or pursuant to the motion filed by . . ." co-defendant Worldwide Flight Services under Federal Rule of Civil Procedure 12(f). (*Id.*) As this issue is not dispositive as to the motion at hand, we will not address the timeliness of Plaintiffs' First Amended Complaint in this Memorandum Opinion. Rather, and contingent upon establishing that this Court may exercise jurisdiction, we will assess this argument in conjunction with the above-referenced "Motion to Strike Improperly Filed Amended Complaint." (*See* ECF No. 28.)

6

### b. Bill Timpano is Not Subject to General Jurisdiction Within the Commonwealth of Pennsylvania

Timpano's argument that he is not subject to general personal jurisdiction in the Commonwealth of Pennsylvania is brief. (ECF No. 45 at 7.) First, he asserts that general jurisdiction is improper as he is "not a citizen or resident of Pennsylvania." (*Id.*) Indeed, he maintains that he resided in the State of New York at the time of Plaintiffs' injuries and currently resides in the State of Connecticut. (*Id.* at 2.) Plaintiffs do not contest these facts. (*See* ECF No. 50.) Second, Timpano asserts that, because Plaintiffs have not established sufficient facts to show that he had continuous and substantial contacts with Pennsylvania, we cannot exercise general jurisdiction over him. (ECF No. 45 at 7.) Plaintiffs also do not contest this argument. (*See* ECF No. 50.) Based on these facts, and because Timpano's arguments as to general personal jurisdiction are uncontested, we conclude that we cannot exercise general jurisdiction over him. Thus, we continue to our analysis of our ability to exercise specific personal jurisdiction over Timpano in this action.

### c. We Cannot Exercise Specific Jurisdiction Over Bill Timpano in this Action

Bill Timpano, during all relevant periods, was employed by co-defendant BTX as its Station Manager in New York, near John F. Kennedy International Airport ("JFK"). (ECF No. 45 at 2-3.) BTX is a "freight forwarder arranging for freight transportation services, by and air and ground, on behalf of its customers, both domestically within the U.S. and internationally." (*Id.* at 3.) Timpano contends that, on or about March 13, 2018, BTX arranged for a company called Cougar Express, Inc. to pick up fourteen pallets of freight—containing the shipment at issue—at Hi-Tech Packing in Springfield Gardens, New York. (*Id.* at 3.) Cougar Express, Inc. then transported this freight from Springfield Gardens to its warehouse in Valley Stream, New York.

7

(*Id*. at 4.) At this warehouse, Timpano conducted a "Dangerous Goods check" of the freight to ensure its compliance with applicable regulations and policies. (*Id*.) Upon completion of Timpano's check, Cougar Express, Inc. transported the shipment from its warehouse in Valley Stream to an American Airlines facility at JFK. (*Id*., Ex. B.) On March 20, 2018, American Airlines accepted the shipment without any exceptions and found the shipment to be in good condition based on its own, independent inspection. (*Id*.) Then, Timpano contends, American Airlines unilaterally "decided to transport the shipment to [Philadelphia International Airport ("PHL")] because [American Airlines] wanted to consolidate the shipment . . . with other shipments scheduled to depart from PHL." (*Id*.) He further states that American Airlines made its own arrangements to transport the shipment from JFK to PHL and that BTX was not involved in the decision or logistics of this transport. (*Id*.)

In his Motion, Timpano correctly recognizes that analyzing specific personal jurisdiction within the Third Circuit requires a three-part analysis. (ECF No. 45 at 8-10 (citing *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 307 (3d Cir. 2007).) As outlined above, the plaintiff must first show that the defendant purposefully directed its activities at the forum. *Allaham v. Naddaf*, 635 F. App'x 32, 39 (3d Cir. 2015) (citations omitted). Second, the litigation must arise out of or relate to at least one of those activities. *Id.* Third, if the plaintiff meets the first two requirements, we may consider whether the exercise of jurisdiction "comport[s] with fair play and substantial justice." *Id.* (quoting *Burger King Corp.*, 471 U.S. at 476.) In this analysis, we recognize that "the proper focus in the specific jurisdiction analysis is on those contacts leading up to and surrounding the accrual of the cause of action. Later events are not considered." *Rocke v. Pebble Beach Co.*, 541 Fed. App'x 208, 212 (3d Cir. 2013) (quoting 16 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE – CIVIL § 108.42 (3d ed. 2010). Given this, Timpano argues that "Plaintiffs herein

cannot satisfy either the first or second inquir[ies] . . . and thus there is no need to reach the third inquiry." (ECF No. 45 at 9.)

Timpano first emphasizes that he did not purposefully direct his activities at Pennsylvania. (ECF No. 45 at 9.) Indeed, he asserts that all actions taken "in connection with the shipment that is the subject of this action were taken in New York, and not intended to reach Pennsylvania. (*Id*.) Consistent with arguments in his co-defendant (and employer) BTX's motion, Timpano states that BTX made arrangements for the Alcosphere Lavender Meadows shipment to be transported by air from New York to Amsterdam. (*Id*.) As part of this shipment, Timpano executed a limited inspection (in New York), "to determine if the labels, shipping documents, and packaging used for the freight were in compliance with applicable IATA/ICAO regulations and policies." (*Id*.) According to both Timpano and BTX, BTX arranged for the shipment to be delivered to American Airlines at JFK, and American Airlines unilaterally decided to move the shipment to Philadelphia International Airport ("PHL") to consolidate it with other shipments. (*Id*.) Timpano, like BTX, maintains that he was not involved in the decision or the arrangements to transport the shipment into Pennsylvania. (*Id*.)

In response, Plaintiffs contend that Timpano "is subject to specific personal jurisdiction in Pennsylvania [in this action] because he supervised, handled, inspected, and approved the shipment of the subject merchandise (Alcosphere Lavender Meadows), which caused Plaintiffs' injuries. . ." (ECF No. 50 at 11.) In so arguing, Plaintiffs cite Pennsylvania's Long Arm Statute, which authorizes the exercise of specific jurisdiction over a person who ships a product into this Commonwealth. (*Id*. at 11 (citing 42. PA. CONS. STAT. 5322(a)(1)(2)).) Plaintiffs emphasize in their brief that "[i]t is uncontested that [the Alcosphere Lavender Meadows] that was shipped and certified by Bill Timpano is the same product that caused Plaintiffs' injuries in Pennsylvania on

9

March 24, 2018. This contact is material and significant." (ECF No. 50 at 11.)

However, even assuming this fact to be true,[2] the Supreme Court has long held that to exercise specific jurisdiction there must be "some act by which the defendant purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Goodyear*, 564 U.S. at 924 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). While recognizing that Timpano contests that he shipped the Alcosphere Lavender Meadows into Pennsylvania, Plaintiffs have not cited any law indicating that the mere act of shipping a single product into a state, and that product causing an injury there, is sufficient for us to exercise specific jurisdiction. Although a single contact with a forum state may support the exercise of a specific jurisdiction, that single contact must be of such a "nature and quality . . . [that] provides a 'substantial connection with the forum." *Gentex Corp. v. Abbott*, 978 F. Supp. 2d 391, 398 (M.D. Pa. 2013) (citations omitted). In this sense, the Supreme Court has emphasized that the test focuses on the "nature and quality and the circumstances" of the contacts. *Int'l Shoe*, 326 U.S. at 318. Here, we find that Plaintiffs contested, conclusory assertions that Timpano shipped the Alcosphere Lavender Meadows into Pennsylvania a single time do not rise to the level of a substantial connection with the Commonwealth.

Plaintiffs also contend that Timpano is subject to specific jurisdiction in this dispute because, "as a manager for BTX, [he] purpose[fully] directed shipping and logistics business at Pennsylvania and its residents." (ECF No. 50 at 12.) They further offer that specific jurisdiction

---

[2] We note that the only evidence that Plaintiffs provide relevant to whether Timpano was the party who shipped the Alcosphere Lavender Meadows into Pennsylvania weighs against their jurisdictional argument. (*See* ECF No. 50, Ex. H.) Plaintiffs attached an American Airlines "Air Waybill" as Exhibit H to their Reply to Timpano's Motion. (*Id*.) This Waybill—signed by Timpano on March 19, 2018 at JFK—lists "JFK John F. Kennedy International Airport New York, NY US" as the "Airport of Departure." (*Id*.) Further, the Waybill notes that "the goods described herein are accepted in apparent good order and condition . . . and Shipper agrees that the shipment may be carried via intermediate stopping places which the carrier [American Airlines] deems appropriate . . ." (*Id*.)

10

is appropriate here for the following reasons: (1) Timpano "possessed full knowledge of and controlled BTX's business activities" and shipping destinations; (2) BTX is registered as a foreign corporation in Pennsylvania and the business for which it is registered is that which caused Plaintiffs' injuries; (3) BTX maintains an office location in Allentown, Pennsylvania; and (4) BTX advertises on its website that it does business in Pennsylvania. To the extent that these arguments relate to Timpano—and not to BTX—they are non-responsive to Timpano's assertion that American Airlines was the only entity or person that "purposefully avail[ed] itself of the privilege of conducting activities within [Pennsylvania], thus invoking the benefits and protections of its laws." *Goodyear*, 564 U.S. at 924 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). As such, we find it improper to exercise specific jurisdiction over Bill Timpano in this dispute and in this Court.

### d. We Sever and Transfer All Claims Against Defendant Bill Timpano to the United States District Court for the Eastern District of New York

Even while viewing all evidence in the light most favorable to Plaintiffs, we find that we cannot properly exercise jurisdiction over Bill Timpano in this matter for the foregoing reasons. However, in this Circuit, "a district court that lacks personal jurisdiction must at least consider a transfer." *Danziger & De Llano, LLP*, 946 F.3d at 132. Indeed, the applicable statute mandates that a district court "'shall' transfer the case rather than dismiss it 'if [doing so] is in the interest of justice.'" *Id*. (quoting 28 U.S.C. § 1631.) Although we may transfer a case *sua sponte*, we need not investigate on our own all other courts in which the case "might" or "could have" been brought. *Id*. (citations omitted). Notwithstanding, we must make some findings under § 1631, at least when the parties identify other courts that might be able to hear the case. *Id*.

The Third Circuit has held that "where a case could have been brought against some

11

defendants in the transferee district, the claims against those defendants may be severed and transferred while the claims against the remaining defendants, for whom transfer would not be proper, are retained." *D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 110 (3d Cir. 2009). Before transferring those claims against Timpano, however, we are directed to "weigh the factors favoring transfer against the potential inefficiency of requiring the similar and overlapping issues to be litigated in two separate forums." *Id*. (citations omitted).

Upon considering the balance of ongoing litigation and the interests of the parties, we have determined that the interest of justice weighs heavily in favor of transferring, rather than dismissing, the claims against Timpano. Here, neither Plaintiffs nor Timpano has identified another court of competent jurisdiction that may be able to hear this case. However, based on the above analysis, it is evident that the exercise of personal jurisdiction over Timpano would be appropriate in at least the United States District Courts for the District of Connecticut and the Eastern District of New York.[3] We acknowledge that transferring the claims against Timpano to another judicial district may cause Plaintiffs inconvenience. This inconvenience, however, does not outweigh the possible consequences of dismissing outright the claims against Timpano or the similarly inconvenient and "unnecessary step of requiring [Plaintiffs] to refile [their] claim[s] in another court." *See Halim v. Eagle Group Int'l, LLC*, No. 08-4312, 2008 U.S. Dist. LEXIS 103551, at *21 (E.D. Pa. Dec. 23, 2008). As such, the interests of justice and judicial economy compel us to transfer all claims against Bill Timpano to the United States District Court for the Eastern District of New York, where jurisdiction and venue are proper. *See* 28 U.S.C. § 1391(b)(2).

---

[3] Bill Timpano has represented that he is currently a resident of the State of Connecticut. (ECF No. 45 at 2.) He also has indicated that all actions he allegedly took in connection with the shipment at issue occurred in New York, and specifically within the Eastern District of New York (Queens County and Nassau County). (*Id*. at 9.)

## III. CONCLUSION

Lacking personal jurisdiction over Bill Timpano, we sever and transfer all claims by Plaintiffs against him to the United States District Court for the Eastern District of New York. An appropriate Order follows.